IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FRANKLIN WRIGHT,                                :
                                                :
                 Petitioner,                    :
                                                :
        v.                                      :         Civil Action No. 20-1549-CFC
                                                :
ROBERT MAY, Warden, and                         :
ATTORNEY GENERAL OF THE                         :
STATE OF DELAWARE,                              :
                                                :
                 Respondents.                   :

---

Franklin Wright. *Pro se* Petitioner.

Elizabeth Roberts McFarlan, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

---

## **MEMORANDUM OPINION**

March 11, 2024
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Petitioner Franklin Wright filed a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and a Memorandum in Support (collectively referred to as "Petition"). (D.I. 1; D.I. 3)  The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 11; D.I. 14)  For the reasons discussed, the Court will deny the Petition.

## I.      BACKGROUND

### A. Factual History

Around 1:30 a.m. on July 11, 2016, a police officer observed Petitioner make a right turn in his Dodge Caliber without signaling and directed Petitioner to pull over.  *See Wright v. State*, 197 A.3d 1041 (Table), 2018 WL 6031433, at *1 (Del. Nov. 16, 2018). Petitioner was the sole occupant of the vehicle.  While asking Petitioner to provide his license, registration, insurance, the officer noticed the odor of marijuana.  (D.I. 10-4 at 27)  After running the vehicle's registration and verifying Petitioner's license, the officer directed Petitioner to exit the car.  (D.I. 10-4 at 28)  When Petitioner asked why he was being asked to leave the car, the officer explained that it was due to the marijuana odor. Petitioner said that he had marijuana and gave the officer a bag of marijuana from his pocket.  (*Id.*); *see Wright*, 2018 WL 6031433, at *1.

The officer searched the car and found a bag of marijuana on the driver's seat, several bags of heroin and a bag of crack cocaine in the driver's side door, a bag with six .38 caliber handgun rounds in the rear hatch along with clear plastic bags, a pill bottle with a woman's name, and a chore boy pad that is often used to filter crack.  *See Wright*, 2018 WL 6031433, at *1.  Upon noticing that the right-hand corner of the central console with the gear shift was sticking up instead of flush with the rest of the console,

the officer lifted the console up and found a loaded .22 caliber handgun.  The handgun was swabbed for DNA, and a DNA sample was obtained from Petitioner.  *Id.*

### B.  Procedural Background

On August 15, 2016, a New Castle County grand jury indicted Petitioner on charges of possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), carrying a concealed deadly weapon ("CCDW"), receiving a stolen firearm, illegal possession of heroin in a vehicle, illegal possession of cocaine in a vehicle, illegal possession of amoxicillin in a vehicle, possession of drug paraphernalia, illegal possession of marijuana in a vehicle, and failing to signal.  (D.I. 10-4 at 13-16); *see State v. Wright*, 2020 WL 218424, at *1 (Del. Super. Ct. Jan. 13, 2020).  The State dismissed the receiving a stolen firearm charge before trial.  (D.I. 11 at 2)  On July 12, 2017, a Delaware Superior Court jury found Petitioner guilty of PFBPP, PABPP, CCDW, two counts of illegal possession of a controlled substance, possession of drug paraphernalia, possession of marijuana, and failure to signal.  *See Wright*, 2020 WL 218424, at *1.  On April 13, 2018, the Superior Court sentenced Petitioner as a habitual offender to 26 years of Level V incarceration, suspended after 23 years for Level II probation.  *See id.*; (D.I. 10-4 at 13-16)

Petitioner appealed.  On appeal, trial counsel filed a brief and a motion to withdraw under Superior Court Rule 26(c), along with two arguments Petitioner wished to present.  *See Wright v. State*, 2018 WL 6031433, at *2 (Del. Nov. 16, 2018); (D.I. 10-3 at 13-14)  The Delaware Supreme Court affirmed Petitioner's convictions and sentence and held that counsel's motion to withdraw was moot.  *See id.* at *3.

In December 2018, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 motion ("Rule 61 motion"), and a motion for appointment of counsel. (D.I. 10-1 at Entry Nos. 56, 57; D.I. 10-12 at 16-29) The Superior granted the motion to appoint counsel and, in July 2019, appointed post-conviction counsel filed a motion to withdraw. (D.I. 10-1 at Entry Nos. 61, 68; D.I. 10-12 at 30-57) On January 13, 2020, the Superior Court denied Petitioner's Rule 61 motion and granted post-conviction counsel's motion to withdraw. *See Wright*, 2020 WL 218424, at *6. The Delaware Supreme Court affirmed that decision on October 2, 2020. *See Wright v. State*, 239 A.3d 407 (Table), 2020 WL 5883455 (Del. Oct. 2, 2020).

In June 2021, Petitioner filed a motion for correction of an illegal sentence under Superior Court Criminal Rule 35(a). (D.I. 10-20 at 70-78) The Superior Court denied the Rule 35(a) motion, and the Delaware Supreme Court affirmed that judgment on February 17, 2022. *See Wright v. State*, 273 A.3d 273 (Table), 2022 WL 499979 (Del. Feb. 17, 2022); (D.I. 10-21)

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the

4

merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

## B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct

5

appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding.  *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted.  *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).  Such claims, however, are procedurally defaulted.  *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000).  Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted.  *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims.  *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.  To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*,

6

477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[1] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.  *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of,

---

[1] *Murray*, 477 U.S. at 496.

clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Petitioner asserts the following two Claims in his timely-filed Petition: (1) his

8

convictions for PFBPP and CCDW[2] should be vacated because the Superior Court provided an incorrect jury instruction on constructive possession and the State failed to establish that Petitioner had actual or constructive possession of the gun found in the car console (D.I. 3 at 1, 4-11); and (2) trial counsel provided ineffective assistance by failing to hire an expert to rebut the testimony provided by the State's DNA expert (D.I. 3 at 2, 12-16).

### A. Claim One:  Errors Surrounding CCDW and PFBPP Convictions

During his trial, Petitioner testified that: (1) he was a drug user and owned the drugs that were found in his car; (2) he did not own or know about the gun, bullets, and plastic baggies that were found in his car; (3) he did not know about the hidden compartment in his car console; (4) he would rent his car out to random drug dealers in exchange for drugs or money to buy drugs; and (5) he had rented his car out the same night he was pulled over by the police officer.  (D.I. 10-4 at 53-54)  In Claim One, Petitioner contends that the State failed to establish that he "ever had control [over] or had the knowledge [that] the weapon was located in the vehicle at the time he took possession of the" car.  (D.I. 3 at 6)  Petitioner also contends that the Superior Court improperly instructed the jury on constructive possession because the court did not

---

[2]Petitioner refers to his convictions as being for "possession of a deadly weapon during the commission of a felony" and "possession of a deadly weapon by a person prohibited"  (D.I. 11 at 1), but he was convicted of possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), and carrying a concealed deadly weapon ("CCDW").  Given the substance of Petitioner's argument, the Court construes Claim One as complaining about his convictions for PFBPP and CCDW.

explain that the State must "prove a nexus between the prohibited individual and the firearm." (D.I. 3 at 4)

The record reveals that Petitioner did not exhaust state remedies for Claim One because he did not present the arguments contained therein to the Delaware Supreme Court on direct appeal or on post-conviction appeal. Any attempt by Petitioner to exhaust state remedies by raising Claim One in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and as successive under Rule 61(i)(2). *See Parker v. DeMatteis*, 2021 WL 3709733, at *6 (D. Del. Aug. 20, 2021). Although Rule 61 provides for an exception to its procedural bars if a Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claim. Similarly, the exceptions to Rule 61's bars contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to Claim One.

Since Petitioner is precluded from exhausting state remedies for Claim One at this point, the Court must excuse Petitioner's failure to exhaust but treat the Claim as procedurally defaulted. Consequently, the Court cannot review the merits of Claim One absent a showing of cause for the default and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claim is not reviewed.

Petitioner does not assert any cause for his failure to include Claim One on direct appeal or on post-conviction appeal. In the absence of cause, the Court will not address the issue of prejudice. Additionally, Petitioner has not satisfied the miscarriage

of justice exception to the procedural default doctrine because he has not provided new reliable evidence of his actual innocence.  Accordingly, the Court will deny Claim One as procedurally barred from federal habeas review.[3]

### B. Claim Two:  Ineffective Assistance of Trial Counsel

During Petitioner's trial, the

> State's expert—Ms. Merkle—testified about the DNA evidence that was recovered from the firearm found in [Petitioner's] vehicle. Much of this DNA evidence was inconclusive; Ms. Merkle testified that she could make no positive identifications for the DNA samples from the firearm's slide, magazine, and grip. However, Ms. Merkle was able to conclude from the DNA recovered from the firearm's trigger that [Petitioner] could be included as a potential DNA contributor to the mixed DNA profile pulled from the firearm's trigger.

*Wright*, 2020 WL 218424, at *4.

In his Rule 61 motion, Petitioner argued that trial counsel provided ineffective assistance by failing to present a DNA expert to rebut the evidence presented by Ms.

---

[3]The Court views Claim One as asserting two arguments: (1) the Superior Court provided an improper jury instruction on constructive possession; and (2) the State failed to establish the sufficiency of the evidence supporting Petitioner's PFBPP and CCDW convictions because it failed to establish the requisite nexus between Petitioner and the gun.  The State views Claim One as asserting only one argument – that the Superior Court provided an improper jury instruction – and does not mention Petitioner's contention that there was insufficient evidence to support his convictions for PFBPP and CCDW. (D.I. 11 at 17-20)  Focusing only the jury instruction issue, the State asserts that the Court should deny Claim One as non-cognizable and procedurally barred. (D.I. 11 at 18-20)  Since Petitioner's argument concerning the sufficiency of the evidence asserts an issue cognizable on federal habeas review, *see Jackson v. Virginia*, 443 U.S. 307, 320-21 (1979), and since both arguments are procedurally barred, the Court finds it most expedient to deny the entire Claim as procedurally barred without addressing the State's contention that the jury instruction argument is not cognizable on federal habeas review.

Merkle and that his rights under the Confrontation Clause were violated as a result of

trial counsel's failure to present a DNA expert. *See Wright*, 2020 WL 218424, at *4.

The Superior Court rejected Petitioner's Confrontation Clause violation and ineffective

assistance of counsel arguments as meritless, and the Delaware Supreme Court

affirmed "on the basis of and for the reasons assigned by the Superior Court in its well-

reasoned January 13, 2020 order denying [Petitioner's] motion for postconviction relief."

*Wright*, 2020 WL 5883455, at *1.

In Claim Two, Petitioner contends that trial counsel provided ineffective

assistance ("IATC") by failing to hire a DNA expert to perform an independent analysis

of the bullets and weapon to determine ownership. (D.I. 3 at 11)  He argues that a DNA

expert "would have strengthen[ed] his testimony [that the gun did not belong to him] and

raise reasonable doubt." (D.I. 14 at 5)  Petitioner further contends that the Superior

Court's denial of Claim Two is an unreasonable application of clearly established federal

law because the Superior Court did not review the Claim pursuant to *United States v.*

*Cronic*, 466 U.S. 648 (1984) and *Hinton v. Alabama*, 571 U.S. 263, 272 (2014).

The record reveals that Petitioner did not present his argument concerning

*Cronic* and *Hinton* in his Rule 61 proceeding.  Nevertheless, given the Superior Court's

adjudication of the substantive IATC argument presented in this Petition, Claim Two will

only warrant relief if the Superior Court's decision was either contrary to, or an

unreasonable application of, clearly established federal law.[4]

---

[4]The Superior Court's January 13, 2021 decision is the last state court decision
containing a reasoned analysis.  Consequently, the Court references the January 13,
2021 Superior Court decision when analyzing Petitioner's argument under § 2254(d).
*See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987).

In *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court articulated a limited exception to *Strickland*'s requirement that a petitioner must

---

court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment); *Y1st v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

demonstrate both deficient performance and prejudice in order to prevail on an ineffective assistance of counsel claim, holding that there are three situations in which prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *See Cronic*, 466 U.S. at 659 & n.25. The *Cronic* presumption of prejudice only applies "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding," *id.,* and counsel completely failed to test the prosecution's case throughout the entire proceeding. *See Bell v. Cone*, 535 U.S. at 697.

Importantly, a court may deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697. If the state court denied an ineffective assistance of counsel claim by only addressing one prong of the *Strickland* test without addressing the merits of the other prong, and the federal court decides to consider the unaddressed prong, the federal court's review of the unaddressed prong must be *de novo. See, e.g., Porter v. McCollum*, 558 U.S. 30, 39 (2009) (stating "[b]ecause the state court did not decide whether Porter's counsel was deficient, we review this element of Porter's Strickland claim *de novo.*"); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (applying *de novo* review where state courts did not reach prejudice prong under *Strickland*).

14

Petitioner argues that the Superior Court should have reviewed Claim Two under the presumed-prejudice standard of *Cronic* because trial counsel's failure to hire a DNA expert constituted a complete abandonment under *Hinton*. (D.I. 3 at 14-16; D.I. 14 at 9-10)  Petitioner's reliance on *Cronic* and *Hinton* is misplaced.  In *Hinton*, the Supreme Court stated that "an attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of an unreasonable performance under *Strickland*."  *Hinton*, 571 U.S. at 274. The Supreme Court's characterization of an attorney's mistaken failure to hire an expert as a "quintessential example of an unreasonable performance under *Strickland*" indicates that an attorney's failure to hire an expert does not, on its own, amount to a complete abandonment of representation.  Moreover, the *Hinton* Court held that Hinton's defense counsel was ineffective for mistakenly believing there was no funding to hire an expert, not for failing to hire an expert.  *See Hinton*, 571 U.S. at 274-75. Petitioner does not allege that trial counsel's failure to hire an expert was based on a mistaken belief that funding was not available.  For these reasons, *Hinton* does not support Petitioner's contention that trial counsel's failure to hire an expert constituted a complete abandonment of representation.

Petitioner does not provide, and the Court does not discern, any other basis for finding that trial counsel abandoned him during his trial.  For instance, Petitioner does not contend that trial counsel failed to meet with him to discuss the case and applicable law, and trial counsel's Rule 61 affidavit actually explains how counsel met with Petitioner "on several occasions" to discuss the proposed defense and met with

15

Petitioner to prepare him to testify.  (D.I. 10-12 at 69)  Trial counsel also moved to

exclude Ms. Merkle's testimony after an extensive *voir dire* proceeding.  (D.I. 10-4 at 41-

45; D.I. 10-12 at 38)  When the Superior Court denied the request, (D.I. 10-4 at 45), trial

counsel highlighted the statistical inadequacies of the DNA evidence when cross-

examining Ms. Merkle.  (D.I. 10-4 at 40; D.I. 10-12 at 38)  Viewed together, these

circumstances do not amount to the "complete abandonment" that would warrant

applying *Cronic*'s presumption of prejudice.  Thus, the Court concludes that the

Superior Court did not unreasonably apply clearly established federal law by failing to

review Claim Two under *Cronic*.

Having determined that *Cronic* is inapplicable, the Court finds that the Superior

Court correctly identified and articulated the *Strickland* standard as governing

Petitioner's instant IATC claim.  Consequently, the Superior Court's decision was not

contrary to clearly established federal law.  *See Williams*, 529 U.S. at 406 ("[A] run-of-

the-mill state-court decision applying the correct legal rule from [Supreme Court] cases

to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary

to' clause").

The Court must also determine if the Superior Court reasonably applied the

*Strickland* standard to the facts of Petitioner's case.  *See Harrington*, 562 U.S. at 105-

06.  When performing this inquiry, the Court must review the Superior Court's denial of

Petitioner's IATC allegation through a "doubly deferential" lens.  *Id*.  "[T]he question is

not whether counsel's actions were reasonable, [but rather], whether there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*.

16

When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

Here, the Superior Court concluded Petitioner failed to satisfy the performance prong of *Strickland*, because:(1) trial counsel exposed the statistical deficiencies with the DNA evidence when cross-examining Ms. Merkle; and (2) during closing argument, trial counsel highlighted facts that indicated Petitioner was unaware of the secret compartment's existence in order to support the defense theory that Petitioner did not know the gun was in the car. *See Wright*, 2020 WL 218424, at *4. More specifically, the Superior Court opined:

> Faced with this limited DNA evidence linking Defendant to the firearm, Trial Counsel elected not to call a DNA expert witness on Defendant's behalf. Instead, Trial Counsel cross-examined Ms. Merkle about the sufficiency of the DNA profile. Trial Counsel focused on Ms. Merkle's conclusion that if the DNA was not from Defendant, then it was more likely that the DNA belonged to someone from the Caucasian or Hispanic population rather than someone who belonged to the African American population, like Defendant. Further, in Trial Counsel's closing argument, Trial Counsel highlighted the following facts for the jury: 1) the secret compartment was difficult for the officer to find at first; 2) the secret compartment was more accessible from the passenger side of the vehicle; and 3) if Defendant knew he had a secret compartment in his car, then he probably would have also hidden the controlled substances in that secret compartment. Trial Counsel's

17

> strategy was to show that Defendant did not know the firearm
> was in his vehicle. Based on the slight connection between
> the DNA evidence recovered from the firearm and the
> Defendant's DNA profile, the Court finds that Trial Counsel did
> not act unreasonably by highlighting the statistical
> inadequacies with the DNA evidence and by arguing that
> Defendant did not know of the secret compartment.

*Wright*, 2020 WL 218424, at \*4.

The Superior Court did not unreasonably determine the facts or unreasonably apply *Strickland* in reaching this decision. The "selection of an expert witness is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable." *Hinton*, 571 U.S. at 275; *see Harrington*, 562 U.S. at 111 ("*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense."). An attorney's failure to hire an expert will constitute deficient performance "where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Hinton*, 571 U.S. at 273. Importantly, in "many instances cross-examination will be sufficient to expose defects in the expert's presentation." *Harrington*, 562 U.S. at 111.

This case is one of those instances where cross-examination was sufficient to expose defects in the expert's testimony. On direct examination, Ms. Merkle testified that: (1) there was not enough DNA from the hammer and grip to make any conclusions; (2) although there was a mixed DNA profile from two contributors for the grip and the slides, Ms. Merkle could not make "any conclusions regarding inclusions or exclusions for the single-source known DNA profile" (*i.e.*, Petitioner) (D.I. 10-4 at 17-18);

18

and (3) there was a mixed DNA profile from the trigger and Petitioner could be included as a potential contributor to the mixture.  (D.I. 10-4 at 18)  In response to the State's question as to whether she could say 100 percent that Petitioner touched the gun, Ms. Merkle responded, "No, I'm saying that he's included as a contributor to the mixture." (D.I. 10-4 at 18)  On cross-examination, trial counsel successfully elicited two separate statements from Ms. Merkle to reiterate that she could not say with 100 percent certainty that Petitioner ever touched the gun and, that based on the statistics, there was a higher probability that a "Caucasian person would have touched [the gun] than an African American."  (D.I. 10-4 at 49)  Additionally, during closing argument, trial counsel highlighted the defects in Ms. Merkle's testimony and argued that the State failed to establish Petitioner knowingly possessed the gun and knew about its location because: (1) Petitioner was not aware that the secret compartment existed; (2) Petitioner admitted to possessing the drugs and, if he had known about the secret compartment, he would have hidden the drugs there as well when stopped by the police officer; and (3) Ms. Merkle's testimony established that DNA from an unknown person was found on the gun, demonstrating that someone other than Petitioner had touched the gun.  (D.I. 10-4 at 62-63)  Trial counsel finished her closing by stating there was reasonable doubt as to whether Petitioner knowingly possessed the gun, because "[s]omebody else who borrowed [Petitioner's] car left the gun there, and whether it was intentional or accidental, somebody else left that gun there."  (D.I. 10-4 at 63)

There is no indication that an expert hired by trial counsel would have been able to exclude Petitioner as a source of the DNA mixture found on the trigger, and trial

counsel was able to obtain Ms. Merkle's explicit statement that there was no certainty that Petitioner ever touched the gun.  Thus, looking through the doubly deferential lens applicable to IATC claims on federal habeas review, the Court finds that the Superior Court reasonably applied *Strickland* to the facts of Petitioner's case when concluding that trial counsel's failure to call a DNA expert did not constitute deficient performance.

The Superior Court did not address the prejudice prong of *Strickland* when denying the instant IATC Claim.  Nevertheless, applying a *de novo* standard of review, the Court concludes that Petitioner has not established prejudice.[5]  Petitioner asserts that a forensic DNA expert could have provided evidence "that established 'others' may have had possession of the vehicle and weapon" because his "fingerprints were not located on the weapon or ammunition found in the vehicle,"[6] but he does not identify a potential DNA expert that would have testified at his trial nor does he identify the content of the expert's potential testimony.  Simply stated, Petitioner's speculative and vague assertion about the alleged effect of an unknown expert's unknown testimony does not demonstrate a reasonable probability that the outcome of his proceeding would have been different but for defense counsel's failure to hire an expert.  *See Showers v. Beard*, 635 F.3d 625, 634 (3d Cir. 2011) (when reviewing the prejudice prong of *Strickland*, a court must consider whether "rebuttal testimony from a credible, objective expert [] would have cast serious doubt on the prosecution's case and there is

---

[5]*De novo* review means that the court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams v. Taylor*, 529 U.S. 362, 400 (2000) (Justice O'Connor concurring).

[6](D.I. 3 at 14)

20

a reasonable probability that the outcome would have been different."); *Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (finding petitioner failed to establish prejudice because he failed to present a sworn statement from the potential expert); *Pasha v. Att'y Gen. of New Jersey*, 2022 WL 16744149, at *25 (D.N.J. Nov. 7, 2022), *cert. app. denied*, 2023 WL 4351530 (3d Cir. Apr. 6, 2023) ("To make a sufficient showing of prejudice for failure to call an expert witness, a Petitioner must offer evidence that an expert would have testified favorably on his behalf and that the testimony would have affected the outcome of the trial.").

Accordingly, the Court concludes that Claim Two does not warrant federal habeas relief.

## IV.   CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

21

The Court has concluded that the instant Petition fails to warrant federal habeas relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition without an evidentiary hearing.  The Court will issue an Order consistent with this Memorandum Opinion.